UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ARTEM VASKANYAN,                    )
                                    )
        Petitioner                  )
                                    )
        v.                          )   Civil Action No. 13-12422-DJC
                                    )
GARY RODEN, as Superintendent of the)
Massachusetts Correctional Institute at )
Norfolk,                            )
                                    )
        Respondent.                 )
_____ )

MEMORANDUM AND ORDER

CASPER, J.                                                              August 6, 2014

I.      Introduction

Petitioner Artem Vaskanyan ("Vaskanyan") has filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C § 2254 alleging that (1) the state court violated his right to an impartial jury by seating a biased juror; (2) his trial counsel's failure to challenge the seating of biased jurors resulted in a denial of his right to effective assistance of counsel and due process; (3) he received an illegal sentence in violation of his due process rights; and (4) - (5) his appellate counsel was ineffective. D. 1; D. 1-1. Respondent opposes the Petition and has moved to dismiss, D. 10, arguing that Vaskanyan's claims are not reviewable by this Court because the claims are either (1) procedurally defaulted based on an independent and adequate state procedural rule; or (2) based purely on state law. D. 11. For the reasons set forth below, the Court DENIES Vaskanyan's Petition and ALLOWS the motion to dismiss.

1

## II.     Background

### A.     Factual and Procedural History

In late 2001, Vaskanyan was tried before a Hampden Superior Court jury on charges stemming from an October 31, 1999 home invasion in Springfield, Massachusetts.[1]  D. 1-1 at 26; D. 11 at 2; Vaskanyan II,[2]  83 Mass. App. Ct. 1137, at *1.  The Massachusetts Appeals Court summarized the evidence presented during the criminal trial as follows:

> On Halloween night in 1999, three men posing as trick-or-treaters forced their way into the home of Ahmet Akin.  During the ensuing robbery, Akin was beaten and shot while trying to protect his daughter, Fulia.  The intruders wore masks and, as a result, neither victim was able to describe the robbers or identify them.  Ultimately, one of the men, Alexi Koba, confessed and identified the defendant and Maksim Lutskov as his accomplices.  Koba testified at trial for the Commonwealth and provided significant details as to the planning and execution of the robbery.  Another witness, Alexander Arkapov, testified before the grand jury that the defendant had been present in his apartment, which he shared with Lutskov, on the night of the robbery.  He also stated that he saw the defendant and the others putting on Halloween costumes.  At trial, however, Arkapov failed to recall his grand jury testimony and claimed that he was too drunk that night to remember anything.  Reluctantly, Arkapov identified the defendant in court as "[a] friend," but maintained that he was unsure whether he saw the defendant at his apartment on the evening of October 31, 1999.

---

[1] To the extent that an Appeals Court decision or Respondent's Memorandum is referenced, Petitioner does not dispute Respondent's recitation of facts with regard to the procedural history of Petitioner's case or the summary of evidence found by the Appeals Court. D. 16 at 4.

[2] All references to the record will be cited as follows:  Vaskanyan's Petition (D. 1); Vaskanyan's Petition Supplement (D. 1-1); Respondent's Memorandum in Support of the Motion to Dismiss (D. 11); Vaskanyan's Memorandum in Opposition to the Motion to Dismiss (D. 16); Transcript Excerpts, Jury Empanelment, December 14, 2001 (D. 16-1); Transcript, Motion Hearing, October 14, 2008 (D. 16-2); Commonwealth v. Artem Vaskanyan, Appeals Court of Massachusetts, Memorandum and Order Pursuant to Rule 1:28, October 15, 2010 ("Vaskanyan I", 78 Mass. App. Ct. 1103); Commonwealth v. Artem Vaskanyan, Appeals Court of Massachusetts, Memorandum and Order Pursuant to Rule 1:28, June 21, 2013 ("Vaskanyan II", 83 Mass. App. Ct. 1137).

Vaskanyan II, 83 Mass. App. Ct. 1137, at *1. On December 19, 2001, Vaskanyan was convicted of (1) home invasion, (2) armed assault with intent to rob, (3)-(4) two counts of assault and battery with a dangerous weapon, and (5) assault and battery. D. 1 at 1.[3]

Following these convictions, Vaskanyan filed a direct appeal to the Appeals Court in December 2001. D. 1-1 at 26; D. 11 at 3. In June 2006, Vaskanyan filed a petition for writ for habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the Commonwealth's delay in producing the criminal trial transcripts violated his due process rights. Id. This Court (Zobel, J.) initially stayed the petition and, upon the Commonwealth's ultimate production of the transcripts, dismissed it without prejudice, noting that Vaskanyan would be free to refile a federal habeas petition once his claim was exhausted at the state level. Vaskanyan v. Marshall, No. 06-10975-RWZ, 2007 WL 906623, at *1 (D. Mass. Mar. 23, 2007).

In September 2007, while his direct appeal was pending, Vaskanyan filed a *pro se* motion for a new trial. D. 1-1 at 27; D, 11 at 3. The Appeals Court consolidated Vaskanyan's direct appeal from the convictions and his appeal from the denial of his motion for a new trial. Vaskanyan I, 78 Mass. App. Ct. 1103, at *2. The Appeals Court considered Vaskanyan's claims that his sentence was illegal under Massachusetts law, that the trial judge erred in seating biased jurors, that the prosecutor improperly introduced testimony she knew to be false, and that his trial counsel was ineffective for failing to challenge the seating of biased jurors and failing to object to the prosecutor's improper use of prior testimony. D. 1-1 at 1-2; Vaskanyan I, 78 Mass. App. Ct. 1103, at *1-3. On October 15, 2010, the Appeals Court affirmed the convictions and order denying a new trial. Vaskanyan I, 78 Mass. App. Ct. 1103, at *3. The Supreme Judicial

---

[3] Vaskanyan was sentenced for these convictions in January 2002. D. 1 at 1.

3

Court denied Petitioner's request for further appellate review in February 2011. Commonwealth v. Vaskanyan, 459 Mass. 1103 (2011).

Petitioner, with the assistance of new counsel, filed a second motion for new trial in November 2011. D. 1-1 at 28, D. 11 at 4. That motion was denied and Petitioner appealed in May 2012. Id. In his appeal, Petitioner argued that (1) the trial judge erred in refusing to provide the jury with an instruction regarding identification; (2) that the Commonwealth improperly introduced prior grand jury testimony at trial and improperly suggested that the jury could consider it for substantive purposes; and (3) that his counsel on direct appeal was ineffective for failing to raise or advance both of those issues.[4] D. 1-1 at 3.

In the consolidated direct appeal and first motion for new trial, Vaskanyan did not raise, and the Appeals Court did not consider the identification instruction or improper testimony issues. Vaskanyan I, 78 Mass. App. Ct. 1103. Therefore, in considering Vaskanyan's second motion for new trial, the Appeals Court determined that both claims of error at trial had been waived and that it was not the type of "extraordinary case" that would warrant allowing Petitioner to raise the waived issues to prevent a "miscarriage of justice." Vaskanyan II, 83 Mass. App. Ct. 1137, at *1 (citing Commonwealth v. Harrington, 379 Mass. 446, 449 (1980)). The Appeals Court then considered Vaskanyan's ineffective assistance of counsel claims under

---

[4] The Appeals Court characterized Petitioner's ineffective assistance of counsel claims as relating to 1) trial counsel's failure to preserve the improper use of prior testimony issue and 2) the first appellate counsel's failure to raise the identification instruction and improper testimony issues, either in the first motion for new trial or on direct appeal of the convictions. Vaskanyan II, 83 Mass. App. Ct. 1137, at *1. Petitioner argued in his brief that, while trial counsel requested and was denied an instruction on the subject of identification as it related to the victims' identification of the assailants, the trial judge did not fully consider issuing an identification instruction as it related to a possible misidentification of Petitioner by an admittedly intoxicated co-assailant. See 2012 WL 2345241, at *8. Petitioner characterized the identification instruction issue as being fully preserved, making his first appellate counsel's failure to raise it the basis for the ineffective assistance claim. See id.

the "substantial risk of a miscarriage of justice" standard.  Id.  Finding that neither claim of ineffective assistance of counsel created a substantial risk of a miscarriage of justice, the Appeals Court affirmed the order denying the second motion for new trial on June 21, 2013.  Vaskanyan II, 83 Mass. App. Ct. 1137, at *2, and the Supreme Judicial Court denied an application for further appellate review on July 25, 2013.  Commonwealth v. Vaskanyan, 466 Mass. 1102 (2013).  Vaskanyan filed the present, timely Petition for writ of habeas corpus on September 30, 2013.  D. 1.

### B. Vaskanyan's Petition and Memorandum in Opposition to Respondent's Motion to Dismiss

The first two grounds of Vaskanyan's Petition relate to the trial court's seating of, and trial counsel's purported ineffectiveness in failing to object to, allegedly biased jurors.  D. 1; D. 1-1.  Grounds three through five relate to the legality of his sentence and claims that his appellate counsel was also ineffective.  Id.  In his memorandum of law in opposition to Respondent's motion to dismiss, D. 16, Vaskanyan advances arguments pertaining to grounds one and two only.  He concedes that grounds three through five of his petition appear to be without merit and does not advance arguments related to those grounds.  D. 16 at 4, n. 3.  Because Vaskanyan advances arguments related only to grounds one and two of the Petition, the Court will consider those grounds and related arguments and will dismiss, without prejudice, grounds three through five.

### C. Relevant Proceedings in State Court

The Court summarizes the state proceedings relevant to ground one and ground two of the Petition.

*1. Jury Empanelment*

Petitioner argues, as he did upon direct appeal, that the trial judge erred by seating a juror who stated he would credit the testimony of a police witness more than that of another person, thereby depriving him of his right to an impartial jury. D. 1-1 at 4. Vaskanyan's jury empanelment took place in Hampden Superior Court on December 14, 2001. The court engaged in the following colloquy with juror 4-13:

> JUROR:  I'm John Rit Rit (phonetic)
> COURT:  Okay, sir.
> JUROR:  My problem is I would tend to believe what a police officer said. I don't know if I can be truly impartial.
> COURT:  That's what you're here to decide. Let me ask you this. I'm looking at your background. Obviously you're a United States citizen. You truly feel you could not keep an open mind in terms of (inaudible) credibility whether it's a police officer or someone else?
> JUROR:  I don't know honestly, and I know a couple policemen and I would like to think I could but I don't really know if I could.
> COURT:  Okay. I'm not going to excuse you at this time. I'm going to take a look at the overall panel. I understand you'll be deciding this case on the facts presented to you in this courtroom.
> JUROR:  I only believe the police officer would have whatever facts to do the job to get him there. I'm sorry. I think policemen would have the facts to arrest someone.
> COURT:  So you think that because a person is charged with a crime and a police officer's participation in developing that charge, that the charge is necessarily true?
> JUROR:  I don't think that the policemen developed a charge. What I think is the policemen had the facts to see that he got the right person. That's why I'm saying I don't think he would arrest anyone without substantial proof.
> COURT:  But you do understand police officers would not be testifying as to innocence or guilt. That's not their determination. They're testifying as to facts.
> JUROR:  As to facts they have found.
> COURT:  So knowing that would you still have a tendency to believe them if the same facts were testified to by a civilian witness?
> JUROR:  Are you asking me if civilian witness (inaudible) tend to believe police officer more?
> COURT:  Or civilian witness didn't (inaudible), tend to believe police not the civilian no matter what is said?
> JUROR:  I don't know.
> COURT:  I'm going to keep you. I think you can keep an open mind.

D. 16-1 at 24-27.

The colloquy with juror 4-8 was as follows:

| | |
|---|---|
| COURT: | Mr. Robert. |
| JUROR: | Yes. |
| COURT: | You're currently in the armed forces? |
| JUROR: | Yes, I am. In the National Guard 23 years, first sergeant maintenance squad. |
| COURT: | What's your concern. |
| JUROR: | I answered yes to I'd believe a police officer. |
| COURT: | You would have a tendency to believe a police officer over a civilian? |
| JUROR: | Yes. |
| COURT: | Do you feel, based on your military background and principles you use in that capacity as well as your thoughts as an American citizen, that you could put that aside and keep an open mind in terms of civilian witnesses versus police officers? |
| JUROR: | I think I could. I answered yes to the question. I think I could put it aside. |
| COURT: | You think you could put it aside? |
| JUROR: | Uh-huh |
| COURT: | You're here because I asked that question. Good for you, Mr. Robert. I'm going to keep you. |

D. 16-1 at 22-23. After voir dire of the jury pool, the parties were allowed to challenge the seating of individual jurors. D. 1-1 at 7. Vaskanyan's defense counsel exercised all fourteen allotted preemptory challenges, while the Commonwealth used nine. Id. Defense counsel did not challenge juror 4-8 or 4-13, either for cause or via a peremptory challenge, and did not request additional preemptory challenges. Id.[5]

   2.   *Evidentiary Hearing Relative to Vaskanyan's 2008 Motion for a New Trial*

During a motion hearing related to Vaskanyan's first motion for a new trial, his trial counsel testified as to her recollection of the voir dire of juror 4-13. D. 16-2 at 8. She testified that, at that time, she had no recollection of the colloquy with juror 4-13 and did not remember why she had not used a preemptory challenge or objected for cause. Id. However, she also

---

[5] In his opposition to the motion to dismiss, Vaskanyan does not press his argument as to juror 4-8 as he concedes that it is without merit. D. 16 at 6 n. 6.

testified that she had twelve years of experience doing criminal defense work, that she understood her right to challenge a juror for cause during the jury selection process, and that, if she had concerns about a potential juror, she would have requested that the court conduct further voir dire of the individual. Id. at 7-9. She testified, further, that if she did not challenge a juror for cause or use a peremptory challenge and did not request that additional questions be posed to the individual, it would be fair to say that she felt that the individual would be good juror, either for her or for her client. Id. at 8-9.

### III. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court reviews Vaskanyan's application for a writ of habeas corpus to determine if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Clarke v. Spencer, 582 F.3d 135, 140 (1st Cir. 2009). This standard is "'difficult to meet' because the purpose of [the statute] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." Greene v. Fisher, __ U.S. __, 132 S. Ct. 38, 43 (2011) (internal citations omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent where "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or where "the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct

governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002). Because the statute "uses the word 'unreasonable,' as opposed to 'erroneous' or 'incorrect,' a state court's application of federal law must go beyond simple error to justify issuance of the writ of habeas corpus." Morgan v. Dickhaut, 677 F.3d 39, 46 (1st Cir. 2012) (citing Williams, 529 U.S. at 411).

## IV. Discussion

### A. Petitioner's Claim Regarding the Seating of Certain Jurors Must Fail

When a federal habeas petition challenges a state court decision that "rests on a state law ground that is independent of the federal question and adequate to support the judgment," a federal court is precluded from considering the habeas claim. Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (quoting Walker v. Martin, 131 S. Ct. 1120, 1127 (2011)). "Procedural default of federal claims in state court is an independent and adequate state-law ground barring habeas relief . . . so long as the state regularly follows the rule and has not waived it by relying on some other ground." Id. (citations omitted). In Massachusetts, it is an "unbroken practice [ ] beyond question" that issues "which could have been raised at the trial and in appellate review after trial[,] but which were not so raised" are considered waived, outside of extraordinary cases in which a judge makes a discretionary determination that the waived claims should be considered to prevent a miscarriage of justice. Commonwealth v. McLaughlin, 364 Mass. 211, 229 (1973) (internal quotations omitted) (citing cases); Commonwealth v. Harrington, 379 Mass. 446, 449 (1980); Commonwealth v. Watson, 409 Mass. 110, 114 (1991). "[T]he Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural

ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).

However, the bar on consideration of a procedurally defaulted claim is removed "[i]f the last state court to be presented with a particular federal claim reaches the merits," Bly v. St. Amand, No. 08-10005-MLW, 2014 WL 1285684, at *5 (D. Mass. Mar. 31, 2014) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991)), or if Petitioner can demonstrate "either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." Gunter v. Maloney, 291 F.3d 74, 78 (1st Cir. 2002) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To demonstrate cause for a procedural default, a Petitioner must generally demonstrate that "some objective factor external to the defense impeded [his] counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Further, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 486.

Petitioner asserts that the court's selection of juror 4-13 deprived him of his right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution. D. 1-1 at 4. He contends that this claim was not procedurally defaulted at the state level because, despite determining that the claim had been waived, the Appeals Court proceeded to adjudicate the merits of the claim, thereby removing the bar to habeas review. D. 16 at 5. Petitioner concedes that "had [the Appeals Court] stopped at its finding of waiver, [R]espondent's procedural bar argument would prevail." Id. However, Petitioner argues that because the Appeals Court did not review the claim under a "substantial risk of a miscarriage of justice" analysis in Vaskanyan I, as the court did with errors that it viewed as waived in Vaskanyan II,

10

the Appeals Court must have assessed the merits of the impartial jury claim when it decided Vaskanyan's consolidated direct appeal and motion for new trial. Id. at 5-6. In other words, Petitioner asserts that the different standards applied in Vaskanyan I and Vaskanyan II indicate that the Appeals Court considered the merits of his impartial jury claim in 2010, removing the bar on consideration of procedurally defaulted claims. Id. at 6.

In Vaskanyan I, the Appeals Court observed that "[a]s an initial matter, defense counsel did not challenge juror number 4-13 for cause or use a preemptory challenge," determining "[t]hus, the question of impartiality of that juror and the adequacy of the voir dire are waived." Vaskanyan I, 78 Mass. App. Ct. 1103, *1. The court continued, stating "[e]ven if this were not the case, our review of the record leads us to conclude that the judge did not abuse his discretion." Id.

Accordingly, the Appeals Court did make an overt determination that the question of the impartiality of the juror 4-13 and the adequacy of the trial court's voir dire examination had been waived. However, because the court went on to review the record for abuse of discretion by the trial court, and because the court did not explicitly view Vaskanyan's ineffective assistance of counsel claim as waived, it is not clear that the Appeals Court offered a "plain statement that its decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (citation and internal marks omitted). While "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" and "may reach a federal question without sacrificing its interests in finality, federalism, and comity," a state court must first "explicitly invoke[] a state procedural bar rule as a separate basis for decision" before assessing the merits of the claim in the alternative. Harris v. Reed, 489 U.S. 255, 264, n.10 (1989) (emphasis in the

original); but see Boutwell v. Bissonnette, 66 F. Supp. 2d 243, 245-46 (D. Mass. 1999); Buxton v. Collins, 925 F.2d 816, 821 (5th Cir. 1991).

In light of the entire opinion, the Appeals Court did not "clearly and expressly" demonstrate the court's intention to rest its decision on state procedural grounds, Harris, 489 U.S. at 263, particularly where the further discussion was not clearly a "discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis," which would not indicate the state court's intention to waive its reliance on the independent state procedural rule, this Court's review of the merits does not "undermine the rule that a state court's finding of procedural default is an adequate and independent state ground." Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006); Gunter, 291 F.3d at 80 (1st Cir. 2002); Jackson v. Amaral, 729 F.2d 41, 44-45 (1st Cir. 1984); Loughman v. O'Brien, 603 F. Supp. 2d 259, 263 (D. Mass. 2009). As such, the Court can address the merits of ground one here. Spencer, 582 F.3d at 143.[6]

However, the Appeals Court's finding that the trial judge's assessment of the impartiality of juror 4-13 was not erroneous or an abuse of discretion is not a decision "contrary to, or involv[ing] an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." U.S.C. § 2254(d)(1); Spencer, 582 F.3d at 140. Because the voir dire process aims specifically at identifying potential juror bias, and because the trial court's determination that a juror was unbiased is "entitled to a presumption of correctness under 28 U.S.C. § 2254," Petitioner bears a heavy burden of demonstrating juror partiality. Gilday v. Callahan, 866 F. Supp. 611, 623 (D. Mass. 1994), aff'd, 59 F.3d 257 (1st Cir. 1995).

> The question whether jurors are impartial in the constitutional sense is one of mixed law and fact as to which the challenger has the burden of persuasion, for: '[u]nless he shows

---

[6] Having found that ground one is not clearly in procedural default, the Court need not address Petitioner's alternative argument, D. 16 at 6-7, that ineffective assistance of trial counsel caused the procedural default, resulting in prejudice.

the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside. . . . And, to decide whether the challenger has sustained his burden, it is the duty of this court [] to independently evaluate the voir dire testimony of the impaneled jurors.'

Geagan v. Gavin, 292 F.2d 244, 246-47 (1st Cir. 1961) (internal citations omitted).

As the Appeals Court discussed, the trial court's colloquy[7] with juror 4-13 does not clearly demonstrate that the juror would be unable to remain impartial. Vaskanyan I, 78 Mass. App. Ct. 1103, at *1. Juror 4-13 stated that he "would like to think [he] could" keep an open mind regarding a witness' credibility, but did not know whether he really could. However, the Appeals Court noted (1) that the trial judge carefully examined the prospective jurors who informed the court that they believed they would afford greater weight and credibility to a police officer's testimony than to a civilian's testimony; (2) that the trial judge concluded that he would not have seated juror 4-13 before ascertaining the juror's impartiality; and (3) that Vaskanyan's trial counsel was satisfied with the jury. Id. at *1-2. As there was no objection from trial counsel, the facts surrounding the placement of juror 4-13 are distinguishable from those cited in Petitioner's brief, D. 16 at 13-14, in which prospective jurors were seated over objection from defense counsel that they be removed for cause.

On this record, the Appeals Court's determination that the seating of juror 4-13 did not deprive Vaskanyan of his right to an impartial jury is not one that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); Spencer, 582 F.3d at 140; see Gavin, 292 F.2d at 249 (noting that trial courts assess a potential juror's character and intelligence through

---

[7] Although the trial court and the Appeals Court each acknowledged that the transcript of the voir dire contained "inaudibles" and was not entirely complete, both courts relied upon the transcript in part in evaluating Vaskanyan's claims. Vaskanyan I, 78 Mass. App. Ct. 1103, at *1 n. 2.

13

observation of his general appearance and demeanor during voir dire and acknowledging that "one who is aware of a slant of mind may not only be more intelligent than one who is not, but, also, being aware and more intelligent, be better able to make due allowance for his predilection and guard against it in conscientiously performing his sworn duty as a juror"). The court's conclusion regarding this issue cannot be said to have been unreasonable.

### B. Petitioner's Ineffective Assistance of Counsel Claim

Vaskanyan next contends that his trial counsel's failure to challenge the seating of two biased jurors denied him of his constitutional right to effective assistance of counsel. D. 1-1 at 6. Specifically, he argues that trial counsel's failure to use a preemptory challenge or challenge for cause jurors 4-13 or 4-8,[8] each of whom deliberated in his case, constituted ineffective assistance of counsel. Id. at 7.

As previously discussed, the Appeals Court acknowledged that "defense counsel did not challenge juror number 4-13 for cause or use a preemptory challenge." Vaskanyan I, 78 Mass. App. Ct. 1103, at *1. Again, however, the court did not "clearly and expressly" demonstrate an intent to rely on procedural waiver as the basis for deciding the ineffective assistance of counsel claim, Reed, 489 U.S. at 263, particularly in light of the court's analysis of the issue under Commonwealth v. Saferian, the Massachusetts standard for ineffective assistance of counsel claims that is functionally equivalent to the Strickland standard. Ficco, 438 F.3d at 48 (noting the functional equivalence of the two standards).

Having determined that the Appeals Court reached the merits of the ineffective assistance of counsel claim, rather than relying on waiver as the basis for its determination, this Court will apply the AEDPA standard of review to determine whether the decision was "contrary to, or

---

[8] See footnote 5, supra.

14

involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); Janosky, 594 F.3d at 46-47. "The Strickland standard qualifies as clearly established federal law for purposes of habeas review." Id. at 47 (citations omitted). The Appeals Court's employment of a standard functionally equivalent to Strickland demonstrates that the decision was not contrary to clearly established federal law. Id.

To demonstrate ineffective assistance of counsel under Strickland, a defendant must show (1) that counsel's performance was so deficient that he, effectively, did not receive "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defendant, depriving him of a fair trial. Strickland, 466 U.S. at 687. Thus, the defendant must show that his "counsel's representation fell below an objective standard of reasonableness," Id. at 688, and that "there is a reasonable probability [(which undermines confidence in the outcome of his case)] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Under Saferian, employed by the Appeals Court here, Massachusetts courts analyze "the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel-behavior of counsel falling measurably below [that] which might be expected from an ordinary fallible lawyer-and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." Commonwealth v. Saferian, 366 Mass. 89, 96, (1974).

Petitioner asserts that the Appeals Court improperly applied the standard for evaluating the effectiveness of counsel. D. 16 at 17. The Appeals Court determined that Vaskanyan had not met his burden of demonstrating ineffective assistance, agreeing with the trial court that Vaskanyan's trial counsel's failure to challenge the seating of the juror was a "sound, reasonable, strategic decision" and noting that trial counsel was an experienced criminal defense attorney

who worked proactively to expose potential juror bias during the jury selection process. While trial counsel did not recall the court's examination of juror 4-13 or her reasons for not challenging that particular juror, D. 16-2 at 8, she testified that she was an experienced criminal defense attorney and would have requested that the court conduct further examination of juror 4-13 if she had concerns about his impartiality. Id. at 7-9. Trial counsel's conclusion that her failure to challenge the juror or request further examination related to her determination that the juror would be good for her or her client, id. at 8-9, supported the state court findings that she had not been ineffective.

Accordingly, Petitioner has not made a showing that trial counsel's failure to challenge juror 4-13 was so deficient that he was denied effective assistance of counsel and was deprived of his right to a fair trial. Strickland, 466 U.S. at 687. In addition, Petitioner has not demonstrated that, but for trial counsel's seriously deficient conduct in failing to use an available challenge to juror 4-13, the outcome of his proceeding would have been different. Id. at 694. Accordingly, this Court cannot conclude that the Appeals Court decision involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1); Janosky, 594 F.3d at 46-47.

## V. Conclusion

For the aforementioned reasons, the Court DENIES Vaskanyan's petition for a writ of habeas corpus, D. 1, and GRANTS the motion to dismiss, D. 10, with prejudice as to grounds one and two and without prejudice as to grounds three, four and five.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge